855 P.2d 787

CHANDLER MEDICAL BUILDING PARTNERS, an Arizona General Partnership, Plaintiff–Appellant,

v.

CHANDLER DENTAL GROUP, an Arizona General Partnership; Kevin Cook and Jane Doe Cook, husband and wife; Gerald DiQuattro and Jane Doe DiQuattro, husband and wife; and Gail Goodman and Jane Doe Goodman, husband and wife, Defendants–Appellees.

No. 1 CA–CV 91–0246.

Court of Appeals of Arizona, Division 1, Department B.

May 25, 1993.

Ryley, Carlock & Applewhite, P.A. by David L. Case and John C. Lemaster, Phoenix, for plaintiff-appellant.

Kempton, Jarvis, Decker, Jenkins & Walker, P.A. by Roger C. Decker and William G. Rood, Mesa, for defendants-appellees Chandler Dental Group, Kevin Cook and Rhonda Cook.

Udall, Shumway, Blackhurst, Allen & Lyons, P.C. by Gregory L. Miles and Sterling R. Threet, Mesa, for defendants-appellees Gerald DiQuattro, Vivian DiQuattro, Gail Goodman and Linda Goodman.

## OPINION

JACOBSON, Presiding Judge.

Plaintiff-appellant Chandler Medical Building Partners ("CMBP") appeals from the trial court's judgment dismissing its complaint against defendants-appellees. The primary issue on appeal is whether the terms of the partnership agreement provided an exclusive remedy for Defendants' failure to pay capital contribution assessments, thereby precluding CMBP from maintaining a cause of action for damages pursuant to A.R.S. § 29–238.

### FACTS AND PROCEDURAL BACKGROUND

CMBP is an Arizona general partnership ("the partnership") formed pursuant to the Uniform Partnership Act as adopted in Arizona, A.R.S. §§ 29–201 *et seq.*, by agreement dated June 3, 1983 ("the partnership agreement"). Chandler Dental Group ("CDG") is an Arizona general partnership,

and, for purposes of this appeal, is deemed to be a general partner of CMBP. Defendants-appellees Kevin Cook, Gerald DiQuattro, Gail Goodman, and their respective spouses, are all general partners of CDG (collectively "Defendants"), who are bound by the terms of the partnership agreement.

The partnership was formed for the purpose of developing, constructing, operating, leasing, or selling a two-story medical office building in Chandler, Arizona. The partnership constructed the building, but incurred substantial debt, including more than $3 million in bonded indebtedness. The partnership was unable to pay its debt obligations and its necessary operating expenses. Therefore, pursuant to the partnership agreement, a majority of the partners on November 21, 1988, and again on September 26, 1989, by resolutions, voted to make capital call assessments against all partners based upon each partner's percentage interest in the partnership. The resolutions authorized three assessments for periods ending in 1988, 1989, and 1990. Although CDG paid the 1988 assessment, it did not pay the 1989 and 1990 assessments.

Effective April 1, 1990, a majority of the partners voted to treat CDG as having withdrawn from the partnership for failure to pay the assessments. Sixty percent of the remaining partners then elected to continue the partnership. The partnership then filed an action against Defendants pursuant to A.R.S. § 29–238 for breach of the agreement and for a declaratory judgment, alleging that Defendants had defaulted under the partnership agreement by failing to pay the capital contribution assessments and were liable for damages to the partnership as a result of the breach.

Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure. They alleged that the partnership agreement permitted a partner to withdraw from the partnership for failure to make capital contribution assessments and therefore they were not in default under it. They also argued that, even if there was a default, the partnership agreement provided specific procedures and exclusive remedies for such a default, and these exclusive remedies foreclosed an action under A.R.S. § 29–238. The court, treating the motion as one for summary judgment pursuant to Rule 56, Arizona Rules of Civil Procedure, agreed and entered judgment in favor of Defendants, dismissing the complaint and granting attorneys' fees. CMBP appealed, raising the following issues:

1. Did the trial court err in finding as a matter of law that Defendants were not in default under the partnership agreement when they failed to pay the capital contribution assessments?

2. Did the trial court err in finding that the partnership agreement provides an exclusive remedy for the partnership when Defendants failed to pay the capital contribution assessments, thus precluding an action for damages pursuant to A.R.S. § 29–238?

## DISCUSSION

### A. *Default Under Partnership Agreement*

CMBP argues that section 10 of the partnership agreement unambiguously requires that each partner contribute additional capital when requested to do so by a majority of the partners. Alternatively, CMBP argues that the partnership agreement sets forth a "particular undertaking" for the partnership, which prevents a partner from dissolving the partnership until the undertaking is completed. CMBP alleges that, when Defendants failed to pay the required assessment, a default occurred under the agreement.

Defendants argue that sections 10 and 14 of the partnership agreement unambiguously give a partner the right to withdraw from the partnership by refusing to pay a capital assessment, without any subsequent liability of that partner to the partnership. Defendants thus allege that no default occurred under the agreement as a matter of law. To resolve the dispute, we first examine the relevant portions of the agreement.

1. *Applicable provisions of the partnership agreement.*

Section 5(a) of the partnership agreement requires each partner to make an initial capital contribution to the partnership. Section 5(b) provides that "[e]xcept as provided above and in Section 10 hereof, no partner shall be obligated to contribute any additional capital...." Section 10 provides, in pertinent part:

In the event that the cash of the partnership is insufficient to pay the necessary cash operating expenses and debt service obligations of the partnership as and when they become due ... then the partnership, on the determination of a majority in interest of the partners, may make a call upon each partner for such sums as (in the discretion of a majority in interest of the partners) shall be necessary for the payment of such obligations as and when they become due. *Each partner shall thereupon be obligated to contribute his pro rata share thereof within thirty (30) days after the date such call is made.* Any such amounts which are paid by a partner to the partnership under this section shall be due within thirty (30) days after call and shall be a loan by the partner to the partnership, and not a capital contribution (unless otherwise determined by a majority in interest of the partners).... *In the event a partner fails to provide his pro rata share as requested by this Section he shall be treated as having withdrawn from the partnership (see Section 14 ).*

(Emphasis added.) Section 14(a) of the partnership agreement provides:

A partner may withdraw from the partnership at any time. If a partner declines to meet any call to pay any necessary cash operating expenses and debt service to the partnership in accordance with Section 10 hereof, he shall be treated as having elected to withdraw from the partnership.

Section 14(c) provides that the partnership shall be dissolved *inter alia* by the withdrawal of a partner, but provides that sixty percent in interest of the remaining partners may elect to continue the partnership notwithstanding the withdrawal, and, in that event, the interest of the withdrawing partner shall remain under the control of the partnership.

Section 17 of the partnership agreement provides, in pertinent part:

Upon dissolution of the partnership because of the withdrawal, expulsion, or bankruptcy of a partner or issuance of a charging order against a partnership interest, as specified in subsection 14(c) for the election to continue the business of the partnership, the partnership itself, acting by a majority in interest of its partners, shall have the option, at any time during the thirty-six (36) months period following the date of dissolution ... to purchase such former partner's interest by giving written notice of exercise of such option to the other prior to the expiration of such thirty-six (36) months period.... If such notice is not given within such period such option shall terminate and be of no further force and effect; provided, however, such former partner or his successor in interest shall, during the six (6) months period following the expiration of the partnership's thirty-six (36) months option period, have the option to require the continuing partnership to purchase such former partner's interest by giving written notice of exercise of such option to the partnership prior to the expiration of such six (6) months [period]....

Finally, section 18 of the partnership agreement provides:

Any provision of this Agreement notwithstanding, if a partner or partner's affiliate is in default ... under any term or provision of this Agreement, such partner or such partner's successor shall not be entitled to exercise any rights or options during the period such default continues to which such partner or his successor would be entitled under this Agreement. The partnership shall have a prior lien, security interest, charge and right of off-set against the interest of each partner or former partner for all obligations ... which arise under this Agreement. All such obligations shall

be fully paid and satisfied before a partner or former partner shall be entitled to receive any distribution on account of profits, partnership capital or because of the purchase of his interest by the partnership.

### 2. *Applicable principles of contract interpretation and construction.*

Interpretation of a contract is a question of law for the court where the terms of a contract are found to be plain and unambiguous. *Smith v. Melson, Inc.*, 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983). Whether a contract is ambiguous is a question of law; the mere fact that parties disagree as to its meaning does not establish an ambiguity. *DeCarlo v. MCSA, Inc.*, 163 Ariz. 23, 25, 785 P.2d 592, 594 (App.1988).

The controlling rule of contract interpretation requires that the ordinary meaning of language be given to words where circumstances do not show a different meaning is applicable. *Brady v. Black Mountain Inv. Co.*, 105 Ariz. 87, 89, 459 P.2d 712, 714 (1969). A contract must be construed so that every part is given effect, and each section of an agreement must be read in relation to each other to bring harmony, if possible, between all parts of the writing. *Gesina v. General Elec. Co.*, 162 Ariz. 39, 45, 780 P.2d 1380, 1386 (App.1988). As a corollary, the court will not construe one provision in a contract so as to render another provision meaningless. *Norman v. Recreation Centers of Sun City, Inc.*, 156 Ariz. 425, 428, 752 P.2d 514, 517 (App.1988). The court must apply a standard of reasonableness in contract interpretation. *Gesina*, 162 Ariz. at 45, 780 P.2d at 1386.

### 3. *Obligations and default under section 10.*

Section 10 of the partnership agreement provides that, if the partnership is in need of additional cash for necessary operating expenses and debt service obligations, on the determination of the majority of the partners, the partnership may make an additional capital contribution call upon the partners. The section further provides that "[e]ach partner shall thereupon be *obligated* to contribute his pro rata share thereof within thirty (30) days after the date such call is made." (Emphasis added.) The plain meaning of the word "obligate" is "to bind to the observance or performance of a duty; to place under an obligation. To bind one's self by an obligation or promise; to assume a duty." *Black's Law Dictionary* 1073 (6th ed. 1990). In addition, the agreement provides that any amounts paid under section 10 "*shall be due* within thirty (30) days after call...." (Emphasis added.) This language clearly indicates that Defendants had a mandatory duty under the agreement to pay the capital assessments.

Defendants argue that other portions of the agreement indicate otherwise. In particular, section 10 provides that in the event a partner fails to provide his pro rata share as *requested* he shall be treated as having withdrawn. Section 14(a) provides that a partner *may* withdraw from the partnership at any time and that, if a partner fails to meet a capital call, he shall be treated as having withdrawn and shall have no further interest in the partnership. Section 14(c) provides that withdrawal of a partner causes a dissolution of the partnership unless 60% in interest of the remaining partners agree to its continuation. Defendants allege, therefore, that under the plain language of the agreement a partner has a right to withdraw by failing to pay a requested capital contribution and may cause a dissolution of the partnership at any time without liability to the partnership. In response, CMBP argues that section 14 of the agreement reflects only that a partner cannot be forced to remain in the partnership relationship against his will.

In this regard, we recognize a distinction between the power to dissolve a partnership and the right to dissolve it in that any partner has the power to dissolve a partnership, even if the dissolution is in contravention of the agreement. *See* 59A Am. Jur.2d *Partnership* § 819 at 640–41 (1987). Section 31 of the Uniform Partnership Act (1969) (U.P.A.) recognizes such power al-

though the agreement might limit the right to dissolve the partnership and the dissolution may constitute a breach. U.P.A. § 31; A.R.S. § 29–231. As the comment to § 31 states:

The relation of partners is one of agency. The agency is such a personal one that equity cannot enforce it even where the agreement provides that the partnership shall continue for a definite time. The power of any partner to terminate the relation, even though in doing so he breaches a contract, should, it is submitted, be recognized.

*See also Imperial Litho/Graphics v. M.J. Enterprises,* 152 Ariz. 68, 75, 730 P.2d 245, 252 (App.1986) (partner has absolute right to dissolve partnership, but if dissolution is in breach of agreement, this affects amount he may recover upon dissolution); *Hunter v. Straube,* 273 Or. 720, 543 P.2d 278 (1975) (because partners failed to follow specific procedures for withdrawal under partnership agreement, they had the power, but not the right to withdraw and remaining partners had cause of action for damages); *Woodruff v. Bryant,* 558 S.W.2d 535 (Tex.Civ.App.1977) (U.P.A. codifies common law rule that every partner has inherent power to dissolve partnership even if exercise of right might constitute a breach and render dissolving partner liable for breach).[1]

Attempting to harmonize the language of section 10 with the language of section 14, we think the most reasonable construction of the phrase "may withdraw" in section 14 is that a partner has the power to withdraw from the partnership at any time, and that such withdrawal causes an automatic dissolution of the partnership. To construe section 14 as Defendants suggest would render the obligatory language of section 10 meaningless and superfluous. Furthermore, in our view, the word "requested" in section 10 does not nullify the "shall be obligated" and "shall be due" language of that section; it simply refers to the fact that, when the partnership requests a specific amount from each part-

ner, that partner must pay it within the time specified, or suffer the consequences. Because Defendants had a contractual duty to pay the assessments under section 10 and failed to do so, we believe the nonpayment constituted a "default" under its terms. Thus, the trial court erred in finding no "default" under the terms of the agreement. However, we will affirm if the court reached the right result for the wrong reason. *See, e.g., Gary Outdoor Advertising Co. v. Sun Lodge, Inc.,* 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982). We therefore examine whether dismissal was justified on the other grounds argued.

B. *Remedies Available to the Partnership on Default*

Defendants argue that, even assuming a default, the agreement sets forth the sole and exclusive remedies of the partnership; thus, the partnership is precluded from bringing an action for damages pursuant to A.R.S. § 29–238. CMBP argues that the options available to the partnership under the agreement are not exclusive remedies; thus, an action for damages under A.R.S. § 29–238 is appropriate.

■ We first note that A.R.S. § 29–218 provides that "[t]he rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them...." "Because partnerships result from contract, the rights and liabilities of the partners among themselves are subject to such agreements as they may make." *G & S Investments v. Belman,* 145 Ariz. 258, 267, 700 P.2d 1358, 1367 (App.1984), *citing* Crane & Bromberg, *Law of Partnership* § 65 at 365 (1968). Thus, parties may agree to terms different from the Uniform Partnership Act. *Vinson v. Marton & Associates,* 159 Ariz. 1, 6, 764 P.2d 736, 741 (App.1988).

■ Although this agreement provides a partner with a contractual obligation to pay a capital call assessment under section 10 of the agreement, the remedies for a de-

1. A partnership that can be dissolved by any partner at any time without liability to the partnership is a partnership at will. A.R.S. § 29– 231; *Brand v. Elledge,* 101 Ariz. 352, 419 P.2d 531 (1966).

fault by failure to pay are provided in sections 14 and 18, and include. the withdrawing partner's forfeiture of any right to participate further in the partnership, a loss of interest in its profits and assets, and the loss of a right to exercise any options or receive any distribution of his capital contribution while the default continues. In our view, section 10 provides a partner with a choice about payment of a capital contribution call: if a partner chooses to pay it, he remains in the partnership; if he fails to pay it, he is treated as withdrawn, with the resulting consequences. Because such a dissolution of the partnership is explicitly provided for under the terms of the agreement, it is not "caused in contravention of the partnership agreement" for which a cause of action for damages would arise under A.R.S. § 29–238.[2]

We also believe such an agreement makes good business sense. Such a "pay or walk" provision leaves a partner free to withdraw from an investment that incurs increasing expenses, with nothing to lose but his existing capital contribution and no future liability. It leaves the remaining partners free to continue the venture as a new partnership with control of the withdrawn partner's interest, and under no obligation to return his capital contribution under any of the buy-out provisions until his default is cured. By providing all parties with choices in the face of increasing capital costs, the agreement has provided remedies for a default that are limited by the terms of the contract and which would be inconsistent with an action for damages. We therefore hold that the trial court correctly dismissed the suit for monetary damages.

## C. *Partnership for Particular Undertaking*

▮ As an alternative theory, CMBP argues there was a dissolution in contra-

vention of the agreement because the partnership was one for a particular undertaking and the undertaking was not yet accomplished. A.R.S. § 29–231 recognizes that a partnership for a particular undertaking (or which has a fixed term) is not terminable at will without liability to the partnership until the particular undertaking is accomplished. *Yoder v. Hooper,* 695 P.2d 1182 (Colo.App.1984), *aff'd,* 737 P.2d 852 (Colo.1987) (where particular undertaking involved, equity will not permit unilateral withdrawal of one partner to detriment of others). *See Rhue v. Dawson,* 173 Ariz. 220, 841 P.2d 215 (App.1992). Moreover, cases from other jurisdictions that have adopted § 31 of the Uniform Partnership Act provide guidance on this issue.

In *Girard Bank v. Haley,* 460 Pa. 237, 332 A.2d 443 (1975), a partnership with no fixed term had as its purpose the leasing and maintaining of real property. The supreme court of Pennsylvania stated:

> A "particular undertaking" under the statute must be capable of accomplishment at some time, although the exact time may be unknown and unascertainable at the date of the agreement. Leasing property, like many other trades or businesses, involves entering into a business relationship which may continue indefinitely; there is nothing "particular" about it.

332 A.2d at 447. *See also Canter's Pharmacy, Inc. v. Elizabeth Assocs.,* 396 Pa.Super. 505, 578 A.2d 1326 (1990) (partnership to renovate equipment and operate a personal care facility not a partnership for a particular undertaking because "operating" like "leasing" may continue indefinitely).

In contrast, a partnership formed for the purpose of developing and selling real property is one for a particular undertaking and is not terminable at will. *68th Street*

---

**2.** On a related point, Defendants argue that A.R.S. § 29–238(B)(1) does not apply because the bonding, indemnification, and accounting provisions of A.R.S. §§ 29–238(B)(2) and (B)(3) do not apply under the terms of the agreement. In response, CMBP argues that the partnership agreement has displaced only the accounting procedures set forth in those subsections but

that this does not foreclose an action for damages under A.R.S. § 29–238. Because the parties did not raise the issue in the trial court whether CMBP is required to follow the procedures set forth in §§ 29–238(B)(2) and (B)(3) in an action under 29–238, we decline to address it.

*Apartments, Inc. v. Lauricella,* 142 N.J.Super. 546, 362 A.2d 78 (1976), *aff'd,* 150 N.J.Super. 47, 374 A.2d 1222 (1977). As stated in *Lauricella:*

> It is true that where a partnership is not limited as to time, and there is nothing to show the intention of the parties as to its duration, it will be held to be a partnership at will. But where a partnership has for its object the completion of a specified piece of work, or the effecting of a specified result, it will be presumed that the parties intended the relation to continue until the object has been accomplished. There is, then, a term fixed by the copartnership agreement, and until that time arrives one partner cannot terminate the partnership and continue the enterprise for his own benefit.

> In keeping with this analysis, a number of cases have found agreements to develop real estate to be partnership or joint venture obligations which are to continue until the undertaking is accomplished.

362 A.2d at 87, *quoting Hardin v. Robinson,* 178 A.D. 724, 162 N.Y.S. 531, 534–35 (1916), *aff'd,* 223 N.Y. 651, 119 N.E. 1047 (App.1918). *See also Williams v. Terebinski,* 24 Ohio Misc. 53, 261 N.E.2d 920 (Com. Pl.1970) (partnership formed for purpose of purchasing and then selling cemetery lots was one for a particular undertaking).[3]

Here, section 3 of the partnership agreement provides that the purpose and business of this partnership shall be to "sponsor, for a profit, the promotion, development, and construction of a two-story medical office building ... to own, hold for investment, improve, *lease, manage, operate or sell* such building." (Emphasis added.) According to the record, at the time the complaint was filed, the building had been constructed and was being leased, managed, or operated, but had not been sold. CMBP claims that the particular undertaking was the sale of the building, which had not been accomplished. We reject this argument because the agreement

does not require that the building ever be sold; conceivably, it can be leased for an indefinite period of time. Under these circumstances, and given the fact that section 20 provides for voluntary dissolution at any time upon agreement of 60% in interest of the partners, we believe that CMBP has not established this was a partnership for a particular undertaking. We thus find no error in the trial court's dismissal based on this argument.

### D. *Attorneys' Fees on Appeal*

Defendants have requested attorneys' fees on appeal pursuant to section 21 of the partnership agreement and Rule 21(c), Arizona Rules of Civil Appellate Procedure. As the prevailing party in this appeal, Defendants are entitled to their reasonable attorneys' fees, pending compliance with Rule 21(c). *See Sweis v. Chatwin,* 120 Ariz. 249, 585 P.2d 269 (App.1978).

### CONCLUSION

For the reasons discussed above, we affirm the judgment of the trial court dismissing the action.

WEISBERG and GERST, JJ., concur.

NOTE: The Honorable STEPHEN GERST was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 3.

---

**3.** Defendants allege that the cases cited by CMBP in support of its position that this was a partnership for a particular undertaking are inapposite because they involve oral partnership agreements. However, whether there is a written or oral agreement is irrelevant for purposes of determining the nature of a partnership.