85 F.3d 635
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
EDW C. LEVY COMPANY, Defendant-Counter-Plaintiff-Appellant,
v.
RM REIN, Plaintiff-Counter-Defendant-Appellee.
RM REIN, Plaintiff-Appellee,
v.
EDW C. LEVY COMPANY, Defendant-Appellant.
 Nos. 94-16421, 94-17207.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1995.
Decided March 1, 1996.
 
 Appeal from the United States District Court, for the District of Arizona, D.C. No. CV-91-00598-WKU; Warren K. Urbom, District Judge, Presiding.
 ORDER
 Before: BROWNING, CANBY, and HALL, Circuit Judges.
 The memorandum disposition filed January 10, 1996, is hereby amended per the attached.
 Appellant's petition for rehearing is hereby DENIED.
 Before: BROWNING, CANBY, and HALL, Circuit Judges.
 
 
 1
 AMENDED MEMORANDUM*
 
 
 2
 This diversity contract action arises out of Levy's purchase of Rein's Arizona-based asphalt mining and processing company. Rein sued in Arizona state court for Levy's alleged breach of the purchase contract, and removed to federal court when Levy counterclaimed for breach of contract, violation of state and federal securities laws, and common law fraud. The district court found for Rein on all counts and awarded it attorneys fees. On appeal, Levy raises four objections: (1) the district court erred in interpreting the parties' contract; (2) it erred in dismissing Levy's securities claims; (3) it wrongly dismissed Levy's common law fraud claim; and (4) it abused its discretion in awarding Rein attorneys fees. Rein requests attorneys fees on appeal. We affirm the district court on the merits and deny fees on appeal.
 
 I.
 
 3
 Levy first argues that Rein warranted in Sections 2.1.13(a), 2.1.7(c)(i), and 2.1.17(a) of the contract that it had all of the permits necessary to operate its business.[1] Levy then argues that § 402 and § 404 permits under the Clean Water Act, 33 U.S.C. §§ 1342, 1344, and an A.R.S. § 45-152 water appropriation permit were necessary but missing. Levy concludes that Rein breached its warranties and that Levy was therefore justified in withholding the royalty payments it owned Rein.
 
 
 4
 Section 2.1.13(a). Section 2.1.13(a) of the contract provides that:
 
 
 5
 (a) Each of the attached Exhibit 2.1.13(a)(1) and Exhibit 2.1.13(a)(ii), respectively, is a complete and accurate list and copies of licenses, permits, registrations and other authorizations (and all applications therefor) of federal, state, county or local governmental, regulatory or administrative agencies or authorities (i) held by or used by Mesa and RSD-Sun in the conduct of Mesa's Business or RSD-Sun's Business, and (ii), necessary for the lawful conduct of Mesa's Business or RSD-Sun's Business, respectively ...
 
 
 6
 Under this section, Rein warranted that Exhibit 2.1.13(a)(i) contained a complete list of all permits held or used by Rein and that Exhibit 2.1.13(a)(ii) contained a list of all permits necessary to conduct Rein's business. Rein did not, however, warrant that it had obtained all licenses and permits necessary to operate its business. See Section 2.1.13(d) ("Rein and RSD acknowledge that they have not ... obtained all licenses [and] permits ... required by federal, state, or local laws ... for the lawful conduct of [Rein's] business ..."). The district court agreed: "Section 2.1.13(a) does not represent or warrant that Exhibit 2.1.13(a)(ii) describes all the licenses, permits and registrations that have not been 'obtained' by Rein, though needed by Mesa or RSD-Sun ..." Because we find the District Court's construction of the contract reasonable in light of Section 2.1.13(d), Chandler Med. Bldg Partners v. Chandler Dental Group, 855 P.2d 787, 791 (Ariz.App.1993), Levy's claim under this section fails.
 
 
 7
 Section 2.1.7(c)(1). Section 2.1.7(c)(i) provides in relevant part: "The use of the Real Property by Mesa, RSD, RSD-Sun ... does not currently violate any applicable zoning, building or use statutes, rules, ordinances or regulations of any federal, state, county or local entity, authority or agency." Although the district court found that Rein had not breached this section on the ground that no permits were necessary, we are not bound by this reasoning and may affirm on any ground supported by the record. Trimble v. City of Santa Rosa, 49 F.3d 583, 584 (9th Cir.1995) (per curiam). We believe that the parties intended Section 2.1.13--and not Section 2.1.7(c)(i)--to govern the claim that Levy now makes. Aboud v. DeConcini, 842 P.2d 1328, 1332 (Ariz.App.1993) ("In interpreting a contract, the court must ascertain and give effect to the intention of the parties at the time it was made, if at all possible."). The language, and even the title, of Section 2.1.13 seem to govern the "licenses and permits" at issue in this case. It is, moreover, doubtful that the parties intended to have two separate and independent sections of their contract make an identical warranty; this is not a reasonable interpretation of the contract and must be rejected. Chandler Med. Bldg., 855 P.2d at 791.
 
 
 8
 Section 2.1.17(a). This section, unlike Section 2.1.13(a) which only applied to licenses necessary and held or used by Rein, is broader and more absolute: "No other permits, licenses or authorizations are necessary ... for the ... use and operation of [Rein's] property." If the Clean Water Act and other permits were required, Rein's failure to have them would at first blush appear to constitute a breach.
 
 
 9
 Section 2.1.17(a), however, carves out an exception for Required Licenses as the term is defined in Section 2.1.13(d) and makes them subject to Section 2.1.13(d)'s provisions. The definition of "Required Licenses" includes the permits at issue in this case.[2] For these Required Licenses, the remedy is not breach and forfeiture of Section 2.1.17(a), but is assertion of rights under Section 2.1.13(d). Because Arizona law abhors forfeiture, see Eisele v. Kowal, 465 P.2d 605, 608 (Ariz.App.1970) (citing Harford v. National Life & Casualty Ins. Co., 299 P.2d 635, 637 (Ariz.1956)), the district court properly preferred Section 2.1.13(d)'s remedy of cooperation over Section 2.1.17(a)'s remedy of forfeiture. Moreover, any insistence on the absolute forfeiture language in Section 2.1.17(a) would render meaningless the language referring to Section 2.1.13(d). This is not favored. Chandler Med. Bldg. Group, 855 P.2d at 791.[3]
 
 III.
 
 10
 Levy argues that Rein violated three different securities laws when it sold its business to Levy via a stock purchase: (1) federal Rule 10b-5; (2) Arizona securities law; and (3) Michigan securities law.
 
 
 11
 To support its federal 10b-5 claim, Levy contends that Rein sold its stock while making the false representation that it had all the necessary permits. Under 10b-5, a false statement is actionable only if made with the "intent to deceive, manipulate or defraud" which requires "actual knowledge" or "a heightened standard of recklessness"; negligence is insufficient. 17 C.F.R. § 240.10b-5; In re Glenfed, Inc. Securities Litigation, 11 F.3d 843, 847 (9th Cir.1993), vacated on other grounds, 42 F.3d 1541 (9th Cir.1994) (en banc). The district court found that Rein did not act with scienter. Because this finding is supported by the record, the lower court properly dismissed this claim.
 
 
 12
 Levy's Arizona's securities claim under A.R.S. § 44-1991 also fails. Because Rein never warranted that he had all the necessary permits under Sections 2.1.13(a), 2.1.7(c)(i), and 2.1.17(a), see Part I, he made no false representation, an element of A.R.S. § 44-1991. Rose v. Dobras, 624 P.2d 887, 892 (Ariz.App.1981). Moreover, we find most of these claims barred by the statute of limitations because Levy learned that permits were necessary (and that the warranties would have been false) more than two years before it filed its February 1992 counterclaim. See A.R.S. § 44-2004(B) (two year limitations period begins to run after plaintiff discovers or should have discovered the fraud).
 
 
 13
 The Michigan securities claim is untimely. Mich.Law 451.810, which provides for a securities claim similar to that under Arizona and federal law, has a two year limitations period with one proviso: the action can "in no event [be brought] more than four years after the contract of sale." Mich.L. § 451.810(e). Since Levy's February 1992 counterclaim was filed more than four years after the January 1987 Purchase Agreement, this claim is barred.
 
 IV.
 
 14
 To prevail, a plaintiff pressing an Arizona common law fraud claim must prove, among other elements, scienter.[4] Wilson v. Byrd, 288 P.2d 1079 (Ariz.1955). For the reasons stated in Part III above, Rein did not act with scienter; this claim fails.[5]
 
 V.
 
 15
 Levy first claims that Rein's request for attorneys' fees was untimely because Rein asked for them in its complaint and in its answer to Levy's counterclaim, but never renewed its request.
 
 
 16
 Under Arizona law, a "claim for attorneys' fees ... shall be made in the pleadings, in the joint pretrial statement, or by written notice filed and served prior to trial or other determination on the merits of the cause." Local Rule 3.7(e); Prendergast v. City of Tempe, 691 P.2d 726, 734 (Ariz.App.1984). Because Rein requested fees twice in its pleadings, its request was timely.
 
 
 17
 Levy next claims that the district court abused its discretion in awarding Levy $78,629 in attorneys fees. Under A.R.S. § 12-341.01, the court may award the successful party "reasonable attorney's fees" in "any contested action arising out of a contract." A.R.S. § 12-341.01. In exercising its discretion, the court should consider the following six factors: (1) the merits of the claim or defense presented by the unsuccessful party, (2) the novelty of the legal question presented and whether such a claim has previously been decided in the jurisdiction, (3) whether the successful party prevailed with respect to all claims, (4) whether an award of fees would discourage other parties with tenable claims from litigating legitimate contract issues, (5) whether litigation could have been avoided so that successful party's efforts were superfluous, and (6) whether awarding fees would impose an extreme hardship on the unsuccessful party. Associated Indem. Corp. v. Warner, 694 P.2d 1181, 1184 (Ariz.1985).
 
 
 18
 In this case, the district court considered and made findings as to each of these factors. We find no abuse of discretion in this fee award.
 
 VI.
 
 19
 This court, like the district court, has discretion under A.R.S. § 12-341.01 to award attorneys fees and must consider the same six factors listed above. Wenk v. Horizon Moving & Storage Co., 639 P.2d 321 (Ariz.1982); Wagenseller, 710 P.2d at 1049. After considering these factors, we deny Rein's request for attorneys' fees on appeal.
 
 VII.
 
 20
 We therefore AFFIRM the district court on all grounds and DENY Rein an award of attorneys fees on appeal.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the breach of Section 2.1.13(d) was never raised below and has not been raised on appeal, Levy has waived this argument
 
 
 [2]
 Section 2.1.13(d) defines Required Licenses as "all licenses, permits, approvals, and authorizations required by federal, state, or local laws, ordinances, codes, orders, rule, or regulations for the lawful conduct of [Rein's business], including without limitation all environmental, groundwater, construction and mining licenses, permits, registrations and other authorizations."
 
 
 [3]
 Because we find that Rein did not breach the contract, we need not decide whether the permits at issue were required
 
 
 [4]
 The remaining eight elements are: (1) the defendant made a statement; (2) the statement was false; (3) the statement was material; (4) the defendant intended that the statement would be acted upon by the plaintiff and in the manner reasonably contemplated; (5) the plaintiff was ignorant of the falsity; (6) the plaintiff's relied on the statement's truth; (7) the plaintiff had a right to rely on the statement; and (8) the plaintiff was proximately injured. Wilson v. Byrd, 288 P.2d 1079 (Ariz.1955)
 
 
 [5]
 Levy's common-law claim for negligent misrepresentation is barred by the statute of limitations. Levy had three years from the time he discovered or should have discovered the misrepresentation to press his claim. A.R.S. § 12-543. Levy applied for a § 404 permit at the Jackrabbit site in December 1987; he would not have done so if he had not thought one was necessary. Given the similarities between the § 404 permit and the others he claims were necessary, Levy should have known of the misrepresentation regarding these other permits in 1987 as well. Because Levy filed his claim in February 1992, his claim falls outside the three-year period and is barred