643 P.2d 1042

**Norris B. BRISCO and Natalie R. Brisco, husband and wife, Plaintiffs-Appellees, Cross-Appellants,**

v.

**MERITPLAN INSURANCE COMPANY, a foreign corporation, Defendant-Appellant, Cross-Appellee.**

**Nos. 1 CA–CIV 5196, 1 CA–CIV 5220.**

Court of Appeals of Arizona, Division 1, Department A.

April 8, 1982.

Hofmann, Salcito, Stevens & Myers, P. A. by Leroy W. Hofmann, Phoenix, for defendant-appellant, cross-appellee.

Langerman, Begam, Lewis & Marks by Noel Fidel, Phoenix, for plaintiffs-appellees, cross-appellants.

## OPINION

FROEB, Judge.

An automobile accident occurred in 1974 which was settled by payment of certain amounts to the two persons injured. Thereafter, one of the two injured persons brought this lawsuit on the ground that the insurance company failed to act in good faith in settling the claims involved. The trial court agreed and entered summary judgment in the sum of $86,761.05. The insurance company now appeals the decision on legal issues as there is no issue of material fact.

Plaintiffs Norris B. Brisco (Brisco) and Susan H. Anderson (Anderson) were pedestrians when they were struck by an automobile owned by Jon C. Poe and Irene Poe (Poe) but driven by Christopher J. Corr (Corr).

The Poe automobile was insured by Fireman's Fund American Insurance Companies (Fireman's Fund) under a $300,000.00 combined, single limit policy.

Corr was insured by Meritplan Insurance Company (Meritplan), the defendant in this suit, under a policy having limits of $100,-000.00 for each person injured in a single accident and $300,000.00 for all persons injured in a single accident. The Meritplan policy served as excess coverage over the Fireman's Fund policy.

Anderson and Brisco filed separate lawsuits in Maricopa County Superior Court against Corr and Poe which were consolidated. Fireman's Fund concluded that the combined damages of Anderson and Brisco exceeded its $300,000.00 coverage and tendered its policy limits to Meritplan, which assumed the defense of the two claims. Fireman's Fund left it to Meritplan to decide how to allocate the $300,000.00 between Anderson and Brisco and how to combine Fireman's Fund money with Meritplan money to accomplish satisfaction of both claims. Meritplan thus had control over the allocation of up to $500,000.00 of insurance to satisfy the claims of Anderson and Brisco.

Meritplan settled the Anderson claim before trial for $163,238.95. It chose to apply $150,000.00 from the Fireman's Fund policy and $13,238.95 from its own policy. That left $150,000.00 remaining under the Fireman's Fund policy and $100,000.00 under the Meritplan policy, a total of $250,000.00. Meritplan offered this sum to Brisco in settlement. Brisco refused, but was willing to settle for $336,761.05. Meritplan refused.

The position of the parties at this point was as follows: Brisco claimed that Meritplan owed its insured, Corr, the duty to apply the funds at its disposal in such a way as to make $336,761.05 available for settlement of the Brisco claim and thereby protect Corr from exposure to an excess verdict in the pending trial. Corr, through his own counsel, agreed. They argued that this could be done by allocating the funds for the Anderson settlement in a different manner. Rather than applying $150,000.00 of Fireman's Fund money and only $13,238.95 of Meritplan money, it could have applied $63,238.95 of Fireman's Fund money and $100,000.00 of Meritplan money. Then, in addition to the $100,000.00 of coverage for Brisco under Meritplan's policy, there would have been $236,761.05 in remaining funds from Fireman's Fund.

From this standoff an unusual agreement was produced which is at the center of the case. Its purpose was to avoid: the necessity of a trial of the Brisco claim potentially resulting in an excess verdict, an assignment by Corr of his bad faith claim to Brisco, and a second lawsuit by Brisco against Meritplan to try the bad faith claim. The agreement was to "telescope" that process so that, in a single lawsuit, Brisco and Meritplan could litigate the narrow issue whether Meritplan's duty of good faith to its insured, Corr, required it to allocate the funds expended for the Anderson settlement in such a manner as to make available $336,761.05 instead of $250,000.00 for settlement with Brisco.

The document which emerged from this is captioned "Covenant and Agreement Not to Sue, Execute or Levy"[1] (hereafter referred to as the agreement). Although it is signed only by Brisco, Meritplan paid $250,000.00 to Brisco in accordance with its terms. Specific provisions are hereafter discussed in context.

### INSURER'S DUTY OF GOOD FAITH

Before reaching the specific issues raised in this appeal, we review briefly some general principles. An automobile liability insurer owes to its insured a good faith duty to terminate a claim against its insured by settlement. *Farmers Insurance Exchange v. Henderson*, 82 Ariz. 335, 313 P.2d 404 (1957). Bad faith of an insurer in failing to settle a claim within the policy limits exposes the insurer to full liability for a judgment thereafter obtained. *Travelers Indemnity Co. v. Hudson*, 15 Ariz.App. 371, 488 P.2d 1008 (1971). In determining whether to settle, an insurer must give equal consideration to both its interest and the interest of the insured. *Farmers Insurance Exchange v. Henderson, supra; Fulton v. Woodford*, 26 Ariz.App. 17, 545 P.2d 979 (1976). By the same token, where an insurer acts honestly and in good faith on adequate information, it should not be held liable for excess liability due to its failure to reach a settlement. *General Accident Fire & Life Assurance Corp. v. Little*, 103 Ariz. 435, 443 P.2d 690 (1968).

1. See Appendix A.

## DID MERITPLAN BREACH ITS DUTY OF GOOD FAITH TO ITS INSURED?

Brisco defends the decision of the trial court by pointing out that it is the bookkeeping employed by Meritplan, dealing not only with money from its own policy but money from the Fireman's Fund policy as well, that produced liability for the bad faith claim. Brisco's position, simply put, is that Meritplan should have used less money from the Fireman's Fund policy to settle the Anderson claim so that there would be enough left from both policies to settle the Brisco claim.

Meritplan contends that by settling the automobile case with Brisco and obtaining the agreement, it thereby fully and completely protected Corr, its insured, from personal liability. Meritplan argues that it thereby completely satisfied its duty of good faith toward its insured and exposed Corr to no harm whatever. While this argument is correct, it overlooks the fact that Meritplan accepted the agreement by paying upon it and, in turn, agreed upon the continued existence of the underlying bad faith claim. The agreement put the bad faith issue in a new posture. Corr was protected, yes, but Brisco thereby gained the right to proceed directly against Meritplan for bad faith in apportioning the proceeds of both policies. The agreement released Corr from all liability and at the same time placed a limit on Brisco's potential automobile damage recovery at an amount equal to $86,761.05, assuring Meritplan that its ultimate liability would be within policy limits. The net effect of the agreement was to end the automobile litigation and open the way for resolution of the bad faith bookkeeping issue.

## DOES THE AGREEMENT RELEASE MERITPLAN FROM ALL LIABILITY TO BRISCO?

Meritplan argues that the wording of the agreement itself is a bar to Brisco's suit for bad faith. Reference is made here to the wording of paragraph 7 which provides that this agreement may be pleaded as a defense in bar of any action taken on behalf of Brisco on account of any claim against Poe, Corr, Fireman's Fund or Meritplan. Meritplan also refers to the language in paragraph 5 by which Brisco releases Poe, Corr, Fireman's Fund and Meritplan from any claim resulting from the automobile accident. The provision of paragraph 5 continues, stating:

[T]he undersigned expressly waive and release any claim or action against Fireman's Fund and Meritplan based upon bad faith and asserting coverage in excess of the policy limits afforded under the respective policies issued in this matter;

and continues further to state:

[P]rovided, however, it is understood that in the litigation against Meritplan referred to in paragraph 6, that the undersigned [Brisco] will be permitted to raise the claim that the insurance companies acted wrongfully and in bad faith in dividing the $300,000 Fireman's Fund policy in the manner in which it was in fact divided between the claimants SUSAN ANDERSON and NORRIS BRISCO.

Brisco argues that the agreement serves as an abatement of any action brought against the named defendants and their insurers with the exception of the bad faith action expressly reserved by Brisco in paragraph 5 of the agreement. We agree with this latter interpretation.

The court will adopt such construction as will harmonize all parts of the contract, and conflicting provisions will be reconciled by a reasonable interpretation in view of the entire instrument. *New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Association*, 12 Ariz.App. 13, 467 P.2d 88 (1970). Furthermore, where there is an inconsistency in a contract, the specific provisions qualify the meaning of the general provisions. *Central Housing Investment Corporation v. Federal National Mortgage Association*, 74 Ariz. 308, 248 P.2d 866 (1952). We cannot read the general clause in paragraph 7 as though it stood by itself, disjointed from the other paragraphs. *Hamberlin v. Townsend*, 76 Ariz. 191, 261

P.2d 1003 (1953). We must read each section of the agreement in relationship to each other, to bring harmony, if possible, between all parts of the writing. *Id.*

■ With this in mind, we examine the entire agreement. It expressly contemplates in recital paragraph 8 the filing of a bad faith action by Brisco against Meritplan to determine "whether the sum of $86,761.05 is/was appropriately available and/or payable under the coverages applicable in this matter." In paragraph 5, Brisco agrees to refrain from suits against Poe, Corr, Fireman's Fund and Meritplan *except* for the litigation against Meritplan referred to in paragraph 6. Paragraph 6 then goes on to provide that Brisco may institute litigation against Meritplan within one year to determine the question whether $86,761.05 should have been paid. Viewing the agreement as a whole, we cannot agree with Meritplan that the general language in paragraph 7 is an abatement of the very bad faith action that the other provisions of the agreement specifically reserved. Instead, we read paragraph 7 as an abatement of any action brought against the named defendants and their insurers with the exception of the bad faith action contemplated in the recitals and expressly reserved by Brisco in paragraph 5.

## DOES BRISCO HAVE STANDING TO SUE?

■ Meritplan argues that Brisco has no assignment from Corr of any bad faith claim Corr has against Meritplan for breach of its duty of good faith. Meritplan correctly points out that the tort claimant, even as a judgment creditor, has no *direct* right to bring a suit for bad faith in an insurer's dealings with its insured. *General Accident Fire & Life Assurance Corp. v. Little, supra.*

In the more usual situation a tort claimant who recovers a damage judgment in excess of policy limits will give the defendant insured a covenant not to execute upon the judgment in return for an assignment of the insured's potential bad faith claim against the insurance company. There is no such written assignment in this case.

■ Brisco argues a written assignment is not necessary in this case and we agree, finding that Meritplan agreed to litigate the bad faith issue directly with Brisco without the necessity of assignment from, or suit against, Corr, the insured. Meritplan asserts that the language in paragraph 5 of the agreement giving Brisco the right "to raise the [bad faith] claim" means that Brisco may file suit "claiming" the Fireman's Fund money was wrongfully divided, but that it did not agree to litigate with Brisco the substance of those allegations. Again, we cannot agree with Meritplan's interpretation of the agreement. Meritplan's agreement to litigate directly with Brisco the bad faith claim of $86,761.05 was the consideration given in return for which Brisco put a limit of $336,761.05 on Meritplan's exposure, relinquished his right to pursue a judgment in excess of that amount, and agreed not to execute personally against Corr. To say that the agreement merely allows the filing of a claim without the right to litigate it is meaningless. We find that Meritplan agreed to litigate the substantive issue of bad faith directly with Brisco and waived any right it might otherwise have had to challenge Brisco's standing.

## CROSS–APPEAL

■ The final issue we address is raised in Brisco's cross-appeal in which he appeals from the denial of his motion for attorneys' fees. He concedes that A.R.S. § 12–341.01, which allows the court to award attorneys' fees in a contested action arising out of a contract, is a matter of discretion for the trial court. He objects, however, to the trial court's conclusion that "contingent fee awards are not contemplated by the statute." Brisco asserts that this was an erroneous basis for the court's decision and therefore the order should be set aside.

The relevant portion of the order reads as follows:

1. This action arises out of contract.

2. Contingent fee awards are not contemplated by the statute.

3. Under the totality of circumstances, the Court exercises its discretion in favor of awarding no attorneys' fees.

4. The court does not feel the statute requires the specification of the reasons for the exercise of such discretion.

Thus, although the trial court stated that contingent fee awards are not contemplated by the statute, it nevertheless went on to exercise its discretion based on the totality of circumstances in the case, as if the statute were applicable. We uphold the order on the basis that the trial court appropriately exercised its discretion under A.R.S. § 12–341.01 and therefore do not reach the question of whether the existence of a contingent fee arrangement will prevent an award of attorneys' fees.

Affirmed.

OGG, P. J., and CORCORAN, J., concur.

APPENDIX A

COVENANT AND AGREEMENT

NOT TO SUE, EXECUTE OR LEVY

KNOW ALL MEN BY THESE PRESENTS:

RECITALS

1. Whereas, NORRIS B. BRISCO, suffered personal injuries in an automobile accident on October 12, 1974 on Camelback Road, Maricopa County, Arizona; and

2. Whereas, in the same accident of October 12, 1974, one SUSAN H. ANDERSON also suffered personal injuries; and

3. Whereas, primary liability insurance coverage on the automobile owned by JON C. POE and IRENE POE (WALTON) and driven by CHRISTOPHER J. CORR was via policy number Z 3595759 issued by the Fireman's Fund American Insurance Companies (hereinafter referred to as "Fireman's Fund") in a single policy limits amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00); and

4. Secondary, or, excess liability insurance coverage on said automobile was via policy number 000178 issued by Meritplan Insurance Company (hereinafter referred to as "Meritplan") in coverages limits of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for any one injury arising out of the use of an automobile and THREE HUNDRED THOUSAND DOLLARS ($300,000.00) for all injuries arising out of one accident; and

5. Both NORRIS B. BRISCO and SUSAN H. ANDERSON filed separate personal injury lawsuits in the Maricopa County Superior Court, State of Arizona, alleging causes of action against JON C. POE, IRENE POE (WALTON), CHRISTOPHER J. CORR and SARAH CORR, alleging damages exceeding the liability limits provided by the Fireman's Fund and Meritplan policies; and

6. Prior to the institution of the above referenced lawsuits Fireman's Fund had paid and advanced the sum of TEN THOUSAND TWO HUNDRED THIRTY–FIVE AND 95/100 DOLLARS ($10,235.95) as partial damages sustained by SUSAN H. ANDERSON, and had paid and advanced the sum of FIFTY–ONE THOUSAND FIVE HUNDRED FOUR and 08/100 DOLLARS ($51,504.08) as partial damages sustained by NORRIS B. BRISCO; and

7. In consideration of the full release of the insureds, and dismissal of the action pending by SUSAN H. ANDERSON, Fireman's Fund paid the sum of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00), which included the advance payments above, and Meritplan paid the sum of THIRTEEN THOUSAND TWO HUNDRED THIRTY–EIGHT AND 95/100 DOLLARS ($13,238.95).

8. It is anticipated that an action shall be filed by NORRIS B. BRISCO and NATALIE BRISCO to determine whether the sum of EIGHTY–SIX THOUSAND SEVEN HUNDRED SIXTY–ONE AND 05/100 DOLLARS ($86,761.05) is/was appropriately available and/or payable under the coverages applicable in this matter.

NOW THEREFORE in consideration it is mutually covenanted and agreed by the undersigned parties as follows:

1. Fireman's Fund shall pay to NORRIS B. BRISCO and NATALIE BRISCO, his wife the sum of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00) inclusive of the amounts previously paid in the sum of FIFTY–ONE THOUSAND FIVE HUNDRED FOUR AND 08/100 DOLLARS ($51,504.08); balance herewith paid and receipt acknowledged in the sum of NINETY–EIGHT THOUSAND FOUR HUNDRED NINETY–FIVE AND 92/100 DOLLARS ($98,495.92).

2. Meritplan shall pay to NORRIS B. BRISCO and NATALIE BRISCO, his wife, the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) receipt herewith acknowledged.

3. Judgment by stipulation in the cause of action pending against JON C. POE, IRENE POE (WALTON), CHRISTOPHER J. CORR and SARAH CORR, Maricopa County Superior Court consolidated cause numbers C–336852 and 348341, shall be entered in the sum of THREE HUNDRED THIRTY–SIX THOUSAND SEVEN HUNDRED SIXTY–ONE AND 05/100 DOLLARS ($336,761.05), without interest, court costs or fees.

4. Partial satisfaction of judgment shall be entered in the amount of TWO HUNDRED FIFTY–THOUSAND DOLLARS ($250,000.00) as represented and offset by the amounts paid above by Fireman's Fund and Meritplan; the balance of the judgment EIGHTY–SIX THOUSAND SEVEN HUNDRED SIXTY–ONE AND 05/100 DOLLARS ($86,761.05) not to bear interest.

5. Except as hereinafter expressly provided the undersigned NORRIS B. BRISCO and NATALIE BRISCO, their heirs, executors and assigns agree to forever refrain and desist from instituting or asserting against JON C. POE, IRENE POE (WALTON), CHRISTOPHER J. CORR, SARAH CORR, FIREMAN'S FUND AMERICAN INSURANCE COMPANIES and MERITPLAN INSURANCE COMPANY, any claim, demand, action, execution, lien or suit of any kind or nature, either direct or indirect, for injuries or damages to persons or property resulting or to result in the future from the accident in question; the undersigned expressly waive and release any claim or action against Fireman's Fund and Meritplan based upon bad faith and asserting coverage in excess of the policy limits afforded under the respective policies issued in this matter; provided, however it is understood that in the litigation against Meritplan referred to in paragraph 6, that the undersigned will be permitted to raise the claim that the insurance companies acted wrongfully and in bad faith in dividing the $300,000.00 Fireman's Fund policy in the manner in which it was in fact divided between the claimants, SUSAN ANDERSON and NORRIS BRISCO.

6. It is covenanted and agreed that the undersigned may institute litigation and proceedings against MERITPLAN INSURANCE COMPANY to determine whether the sum of EIGHTY–SIX THOUSAND SEVEN HUNDRED SIXTY–ONE AND 05/100 DOLLARS ($86,761.05) was/is properly payable in full satisfaction of the judgment entered. In this regard, the undersigned agree and covenant that in the event that said proceedings are not instituted within one year of the date hereof or that a court of competent jurisdiction declares said amount not payable, then in either event satisfaction of said judgment shall be entered in full.

7. It is further expressly covenanted and agreed that as against the undersigned, their executors, heirs, administrators or assigns, this instrument may be pleaded as a defense in bar or absolute abatement of any action of any kind whatsoever brought, instituted, pending or taken on behalf of the undersigned, on account of any claim against JON C. POE, IRENE POE, IRENE POE (WALTON), CHRISTOPHER J. CORR, SARAH CORR, FIREMAN'S FUND or MERITPLAN, and if in the future they or their heirs, administrators, executors or assigns breach the terms and conditions of this covenant they, their executors, administrators or assigns, will indemnify and hold JON C. POE, IRENE POE (WALTON), CHRISTOPHER J. CORR, SARAH CORR, FIREMAN'S FUND and

MERITPLAN safe and harmless from any and all damages resulting therefrom.

IN WITNESS WHEREOF, we have hereunto set our hands and seals this *12th* day of *December*, 1977.

/s/ Norris B. Brisco
NORRIS B. BRISCO
/s/ Natalie Brisco
NATALIE BRISCO

APPROVED:

LANGERMAN, BEGAM, LEWIS, LEONARD & MARKS

By /s/ Anthony J. Palumbo

Attorneys for Norris B. Brisco and Natalie Brisco