Robert L. BARRETT; Barrett Cattle, Inc.; B & R Farms; Johnny Slover; Johnny Slover Cattle, Inc., Plaintiffs–Appellants,

v.

Gerald TALLON, individually; the Bank of Johnston County; Ray Fox, individually, and doing business as R.R.R. Cattle Company; Alvin Bradshaw, individually, and doing business as R.R.R. Cattle Company, Defendants–Appellees.

Robert L. BARRETT; Barrett Cattle, Inc.; B & R Farms; Johnny Slover; Johnny Slover Cattle, Inc., Plaintiffs–Appellants,

v.

The BANK OF JOHNSTON COUNTY,
Defendant–Appellee,

and

Gerald Tallon, individually; Ray Fox, individually, and doing business as R.R.R. Cattle Company; Alvin Bradshaw, individually, and doing business as R.R.R. Cattle Company, Defendants.

Nos. 93–7029, 93–7080.

United States Court of Appeals,
Tenth Circuit.

July 19, 1994.

Donald M. Hunt of Carr, Fouts, Hunt, Craig, Terrill & Wolfe, Lubbock, TX, for appellants.

Ron Wright of Wright, Stout & Fite, Muskogee, OK, for appellees.

Before SEYMOUR, Chief Judge, LOGAN, and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiffs Robert L. Barrett, Johnny Slover, and their cattle companies appeal from separate orders of the district court (1) dismissing their complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and (2) imposing against them Rule 11 sanctions of $32,885.15. For convenience we decide both appeals (Nos. 93–7029 and 93–7080) in this opinion. The district court held that the complaint did not state a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The plaintiffs do not challenge that holding but contend that they successfully pleaded state law claims of fraud and conversion for which there was diversity jurisdiction. The plaintiffs also object to the Rule 11 sanctions on several grounds. We reverse the order of dismissal to the extent that it is inconsistent with this opinion and remand for further proceedings. In addition, we vacate the order of sanctions.

## BACKGROUND

The plaintiffs (appellants) in this case are Barrett, Slover, and their closely held cattle corporations (Barrett Cattle, Inc., B & R Farms, Inc., and Johnny Slover Cattle Co., Inc.). The defendants are the Bank of Johnston County, Oklahoma ("Bank"), Bank president and chief executive Gerald Tallon, and Ray Fox and Alvin Bradshaw of the R.R.R. Cattle Co. ("R.R.R.").[1] According to the complaint, all plaintiffs reside in Texas, and

all defendants reside in Oklahoma. Pl.'s Am. Compl., Appellant's App., No. 93–7029, Tab 1 at 1–3 (hereinafter "Compl.")

Plaintiffs filed their original complaint on October 1, 1992, and amended it on November 13. In essence, the plaintiffs alleged that they placed their cattle in the hands of R.R.R. (Fox and Bradshaw) pursuant to a grazing contract, which plaintiffs say they agreed to based on Tallon's express assurances of R.R.R.'s trustworthiness. *Id.* at 3–4. Tallon allegedly knew otherwise, however, and conspired with R.R.R. to defraud the plaintiffs. *Id.* at 4. According to the complaint, Tallon and Fox mortgaged the plaintiffs' cattle to the Bank in return for $140,000, and Fox, Bradshaw, and the Bank sold the cattle at auction without the plaintiffs' consent, keeping the proceeds for themselves. *Id.* at 4–5.[2]

The complaint stated: "This is an action to recover ... damages as a result of ... violati[ons] ... of the RICO Act ...," and alleged federal jurisdiction on that basis. *Id.* at 3. It also stated: "Jurisdiction properly lies based on the ... diversity statute," 28 U.S.C. § 1332(a)(1). *Id.* at 2–3.

The Bank moved to dismiss for failure to state a claim under Rule 12(b)(6), or, in the alternative, to stay the federal proceedings in favor of a pending state case between the parties. Bradshaw and Tallon answered the complaint, denying liability and asserting that the complaint failed to state a claim.

On February 26, 1993, the district court entered an order dismissing the complaint with prejudice as to all defendants pursuant to Rule 12(b)(6). Dismissal Order, Appellant's App., No. 93–7029, Tab 12 (hereinafter "Dismissal Order"). The court held that the complaint failed to state a RICO claim because it did not allege the requisite "enter-

---

1. The plaintiffs also named Oren Cochran (individually and doing business as Atoka Livestock Auction) as a defendant, but the district court dismissed the complaint against him without prejudice, and he is not a party on appeal.

2. Plaintiffs' counsel on appeal, who did not represent them below, acknowledged that the com-

plaint is no model of clarity. Among other flaws, the complaint ignored Fed.R.Civ.P. 10(b), which states in part, "All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances."

prise" or "pattern of racketeering activity." *Id.* at 2–3. The district court concluded:

> Plaintiffs' allegations are an unsuccessful effort to dress a garden-variety state fraud and/or conversion case in RICO clothing, . . . .
>
> There is presently pending in [an Oklahoma state court] a lawsuit involving these same parties and ... claims ... which are repeated herein as RICO allegations.... Plaintiffs' RICO allegations are nothing more than their state fraud and conversion claims against these defendants.... In any event, the court finds that plaintiffs' complaint fails to state a cause of action on which relief can be granted.

*Id.* at 3–4. On March 18, the plaintiffs filed a motion asking the district court to reconsider, or, in the alternative, for leave to amend their complaint. That motion was denied.

The Bank, meanwhile, filed a motion for Rule 11 sanctions seeking to recover its costs and attorneys' fees incurred in defending against the federal complaint. The district court granted the motion, finding that "plaintiffs' RICO claim ... [was] frivolous and nothing more than an attempt to harass the defendant with unnecessary, vexatious, and multiple litigation on their state claims for fraud and conversion." Sanctions Order, Appellant's App., No. 93–7080, Tab 9 at 2 (hereinafter "Sanctions Order"). The court ordered the plaintiffs to pay "defendants' attorney's fees and costs, necessarily incurred in defending this action," which the court found to be $32,885.15. *Id.* at 2–3. The order imposed no liability for the sanctions award on plaintiffs' attorneys.

## DISCUSSION

### I. RULE 12(B)(6) DISMISSAL OF THE COMPLAINT

■ We review a dismissal under Rule 12(b)(6) de novo, confining our review to the allegations in the complaint and accepting the facts pleaded as true. *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir.1993). We will uphold a Rule 12(b)(6) dismissal only when it appears "clear that no relief could be granted under any set of facts that could be proved consistent with the alle-

gations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Lehman v. City of Louisville,* 967 F.2d 1474, 1476 (10th Cir.1992).

As noted above, plaintiffs accept the ruling that they failed to state a RICO claim. They contend, however, that the district court erred in confining its analysis to RICO without considering whether the complaint alleged fraud or conversion under state law and, if so, whether diversity jurisdiction enabled those claims to be heard in federal court. We agree that the district court read the complaint too narrowly.

■ While the district court correctly observed that the plaintiffs attempted "to dress a garden-variety state fraud and/or conversion case in RICO clothing," the fact that RICO was improperly invoked did not mandate complete dismissal of the complaint. A complaint should not be dismissed under Rule 12(b)(6) "merely because plaintiff's allegations do not support the legal theory he intends to proceed on," 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, at 336–37 (2d ed. 1990), and certainly not when other theories are apparent on the face of the complaint.

In focusing on RICO, the district court failed to analyze whether the complaint adequately pleaded "garden variety" fraud or conversion. Based on our review of the complaint, as explained below, we hold that the plaintiffs successfully pleaded fraud against Tallon and the Bank, and conversion against Tallon, the Bank, Fox, and Bradshaw. Consequently, the complaint should not have been dismissed in its entirety.

### A. *Preliminary Issues*

Before discussing the substantive allegations in the complaint, we address two matters that may require consideration on remand. First, the district court never addressed the plaintiffs' allegation of diversity jurisdiction in the complaint. *See* Dismissal Order at 1 ("Federal jurisdiction in this case is based upon alleged violations of the RICO statute, . . . ."). This was likely because the district court viewed the complaint as purely RICO in character rather than because the

court had found diversity jurisdiction lacking. Thus, we assume—but do not decide—that diversity jurisdiction exists for purposes of reviewing the complaint under Rule 12(b)(6). Of course, on remand the district court must determine whether it has subject matter jurisdiction over the surviving state law claims.

Second, because the proceedings below focused on RICO, there has been little discussion about which state's law applies to the fraud and conversion claims. Plaintiffs have suggested without explanation that Oklahoma law applies, but neither the defendants nor the district court addressed the question. A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state. *Moore v. Subaru of America,* 891 F.2d 1445, 1448 (10th Cir.1989). Here, the forum state is Oklahoma, which in tort cases requires application of the law of the state with the most significant relationship to the occurrence and to the parties. *Childs v. State ex rel. Oklahoma State Univ.,* 848 P.2d 571, 578 n. 41 (Okla.), *cert. denied,* — U.S. —, 114 S.Ct. 92, 126 L.Ed.2d 60 (1993); *White v. White,* 618 P.2d 921, 924 (Okla.1980). According to the complaint, the plaintiffs reside in Texas, the defendants reside in Oklahoma, and most if not all of the allegations occurred either place. Thus, either Oklahoma or Texas law applies. We leave the choice of law question open because under either Oklahoma or Texas law we reach the same conclusions about the complaint under Rule 12(b)(6).

### B. *The Complaint*

#### 1. Fraud

Under Oklahoma and Texas law, a fraud claim requires proof of these elements:

(1) a material misrepresentation, (2) knowingly or recklessly made, (3) with intent that it be relied upon, and (4) actual reliance upon the statement by another to his or her detriment. *See, e.g., Silver v. Slusher,* 770 P.2d 878, 881 n. 8 (Okla.1988), *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989); *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282–83 (Tex.1994) (per curiam). Federal plaintiffs must plead fraud with particularity. Fed.R.Civ.P. 9(b).[3]

The complaint alleges that Tallon, acting in his capacity as president of the Bank, made two representations to Barrett and Slover that he knew to be false: (1) that the Bank fully backed the plaintiffs' grazing contracts with Fox and Bradshaw, and (2) that Tallon knew Fox and Bradshaw to be trustworthy and creditworthy. Compl. at 4. The complaint further alleges that Tallon intended the plaintiffs to rely, and the plaintiffs actually relied, on his assurances to their detriment in entrusting their cattle to Fox and Bradshaw. *Id.* Accepting these allegations as true, as we must, we hold that the plaintiffs stated claims of fraud against Tallon and the Bank with sufficient particularity to avoid dismissal.[4] The complaint does not adequately allege fraud against the other defendants; thus, any other fraud claims are deemed dismissed by the district court's order.

#### 2. Conversion

Oklahoma and Texas cases define conversion as an act of dominion and control wrongfully exerted over another's personal property in denial of or inconsistent with his rights. *See, e.g., Installment Finance Corp. v. Hudiberg Chevrolet, Inc.,* 794 P.2d 751, 753

---

**3.** The complaint makes conclusory averments of fraud against every defendant in sections VII ("Defendants, and each of them, were accordingly guilty of ... committing actionable acts of fraud against your Plaintiffs ...") and IX ("All of these Defendants acted jointly ... to perpetrate said fraud ..."). Compl. at 6. The section VII allegation lacks sufficient particularity to state a claim, and section IX actually alleges conversion, not fraud. Thus, these averments fail to state claims of fraud against any defendant.

**4.** The only theory on which the Bank is alleged to have committed a fraud is vicariously through

Tallon, acting "as agent of The Bank" and "with the full knowledge, consent, and permission" of the Bank "in accordance with his job function as Chief Executive Officer." Compl. at 4. The complaint further stated, however, that Tallon acted "without the participation and joinder of other officers and directors of The Bank...." *Id.* at 5. We express no opinion as to whether there actually was an agency relationship between Tallon and the Bank sufficient to support vicarious liability for fraud, to the extent such liability exists under the applicable state law.

(Okla.1990); *Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex.1992). Pleading conversion requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

■ The plaintiffs allege two acts of conversion. First, they placed $1.5 million worth of cattle "in the hands" of the Bank, Fox, and Bradshaw, and "the Defendants [subsequently] ... converted said cattle ... by selling the cattle at auction and converting the proceeds derived from [the sale] to their own personal use without the knowledge [or] consent ... of the Plaintiffs...." Compl. at 4. Second, Tallon and Fox "mortgag[ed] said Plaintiff's cattle as if said cattle belonged to them, to the Bank ... for the sum of $140,000." Again, accepting these allegations as true, and expressing no opinion of their merit, we hold that they plead conversion sufficient to avoid dismissal under Rule 12(b)(6). Any other attempted conversion claims are dismissed.

### C. *Refusal to Permit the Plaintiffs to Amend*

■ The plaintiffs contend that the district court abused its discretion in denying them leave to amend their complaint after the court entered its order of dismissal. We find no abuse here. The plaintiffs delayed their request until after all discovery and motion deadlines had passed and the case had been dismissed, even though the defendants moved to dismiss the first amended complaint shortly after it was filed. Appellant's App., No. 93–7029, Tab 18 at 8. Since the only reason for plaintiffs' delay appears to have been their willingness to stand on their complaint, we cannot say that the district court abused its discretion in refusing them leave to amend. *See Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993).

### II. RULE 11 SANCTIONS

■ The district court ordered the plaintiffs to pay Rule 11 sanctions of $32,885.15, equal to the Bank's costs and attorneys' fees incurred in defending the federal action. The plaintiffs contend that the sanctions award was unwarranted and excessive, that they did not receive adequate notice that sanctions were being considered against them, and that it was not them but their attorneys, if anyone, who should have been sanctioned. All aspects of the district court's Rule 11 determination are reviewed for abuse of discretion, which is shown if the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Coffey v. Healthtrust, Inc.,* 955 F.2d 1388, 1393 (10th Cir.1992). We vacate the sanctions order for reasons explained below.

### A. *Grounds for Sanctions*

Rule 11, as applicable to the plaintiffs' amended complaint, provides in part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 (prior to amend. effective Dec. 1, 1993).

The district court found two reasons for Rule 11 sanctions against the plaintiffs: (1) there was no reasonable, good faith basis for attempting to sue under RICO, and (2) the court viewed the federal complaint as having been filed vexatiously, in bad faith, for the purposes of harassing the defendants with duplicative litigation and "avoiding" adverse rulings in a similar suit in state court. Sanctions Order at 2.

■ As to the first ground, the district court properly applied an objective standard—whether a reasonable and competent attorney would believe the argument has merit—in concluding that there was no good faith basis to sue under RICO. *See Dodd*

*Ins. Co. v. Royal Ins. Co. of America,* 935 F.2d 1152, 1155 (10th Cir.1991); *White v. General Motors Corp.,* 908 F.2d 675, 680 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Considering that the complaint fell short of pleading two of the necessary elements for a RICO claim, and that plaintiffs under new counsel abandoned their RICO argument altogether on appeal, we cannot say that the district court abused its discretion in justifying sanctions on this ground.

◾ The second ground—improper motive—is more troublesome. Certainly, "[a]s an appellate court we must give deference to fact findings by a district court," *Crabtree ex rel. Crabtree v. Muchmore,* 904 F.2d 1475, 1478 (10th Cir.1990), and particularly when reviewing sanctions under Rule 11, we must give "[d]eference to the determination of courts on the front lines of litigation." *Cooter & Gell,* 496 U.S. at 404, 110 S.Ct. at 2460. Nevertheless, the record gives no support to the district court's finding that the plaintiffs acted vexatiously, in bad faith, or with intent to harass the defendants or avoid rulings by the Oklahoma court.

The district court was displeased that the plaintiffs brought into federal court the same parties and claims already proceeding in state court. Apparently, though, the plaintiffs did not choose the state forum; the Bank named them as third party defendants, along with Fox. *See* Appellant's App., No. 93–7029, Tab 3 at 9. The plaintiffs, in fact, argued to the district court that the Bank joined Fox, whose interests (and domicile) are apparently more in line with the Bank's than the plaintiffs', as a third party defendant in order to defeat diversity and, presumably, removal. While the district court did not discuss the alignment of the parties in state court, and we need not do so here, it is clear that plaintiffs Barrett and Slover did not initiate duplicative actions in state and federal court, as the district court seemed to suggest. And even if they had, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." *Colorado River Conserv. Dist. v.*

*United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (recognizing that "exceptional" circumstances might warrant a stay or dismissal of federal action in favor of concurrent state action) (quotation deleted); *Fox v. Maulding,* 16 F.3d 1079, 1081–82 (10th Cir.1994) (reversing dismissal because district court failed to explain its reliance on *Colorado River* doctrine).

◾ If there was any evidence, other than the existence of a concurrent state action, that the plaintiffs had an improper motive in bringing their federal complaint, the district court did not cite it. While the abuse of discretion standard relieves us "from the duty of reweighing evidence," we still must consider whether Rule 11 sanctions were based on a "clearly erroneous assessment of the evidence." *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2461. Since nothing in the record shows an improper motive, we hold that the district court abused its discretion in imposing Rule 11 sanctions on this ground.

### B. *Amount and Allocation*

"Sanctions must be appropriate in amount and levied upon the person responsible for the violation." *White,* 908 F.2d at 685. Plaintiffs contest the amount of the sanction and the fact that it was imposed against them rather than their attorneys.

The district court based the amount of the sanction on the Bank's total expenses because it believed that (1) the entire complaint was frivolous and (2) it was brought with an improper motive. We have rejected both of those conclusions, and have held that the only permissible basis upon which sanctions could have been imposed was for including the frivolous RICO claim in an otherwise valid complaint. *See Dodd Ins. Co.,* 935 F.2d at 1157 (holding that a complaint with both frivolous and nonfrivolous claims may or may not violate Rule 11). The district court's order of sanctions did not identify the nature or amount of sanction, if any, that was appropriate solely for the frivolous claim. Thus, we must vacate the sanctions order.

If, on remand, the district court decides to order sanctions for the RICO claim, it should impose the least severe sanction reasonably

necessary to deter the wrongdoer, taking into account the factors discussed in *White,* 908 F.2d at 684–85. It should also reconsider whether responsibility for the violation lies with the plaintiffs or their attorneys. Courts routinely direct sanctions for frivolous legal claims at attorneys rather than clients. *See, e.g., Kirk Capital Corp. v. Bailey,* 16 F.3d 1485, 1492 (8th Cir.1994) (reversing sanctions imposed against client for frivolous claim); *Bakker v. Grutman,* 942 F.2d 236, 242 (4th Cir.1991) (noting that sanctions for the frivolous complaint were not warranted against the clients, who acted "on advice of their lawyers"); *see also* 5A Wright & Miller, *supra,* § 1336 at 104 ("[W]hen the offending conduct relates to work that lies within the supposed competence of counsel, especially when it is beyond the understanding of the client … it is the former who should be sanctioned, not the latter.").

In fact, under the recent amendment to Rule 11, which does not strictly apply here but is nevertheless instructive, monetary sanctions may *not* be imposed against a represented party—only against the attorney—for the assertion of a frivolous legal claim or contention. Fed.R.Civ.P. 11(c)(2)(A) (effective Dec. 1, 1993). Thus, in the case of a frivolously pleaded RICO claim, it seems that the court should sanction the responsible attorneys rather than the plaintiffs, unless it finds that the plaintiffs insisted, against the advice of counsel, that the RICO claim be asserted, or that the plaintiffs had a sufficient understanding of the nature, elements, and limitations of the attempted RICO claim to independently evaluate its applicability to the alleged facts. *See White,* 908 F.2d at 685 (sanctioning a party "requires specific findings that the party was aware of the wrongdoing").

### C. *Due Process*

"A party that is the target of a sanctions request has a due process right to 'notice that such sanctions are being considered by the court and a subsequent opportunity to respond' before final judgment." *White,* 908 F.2d at 686 (quoting *Braley v. Campbell,* 832 F.2d 1504, 1514 (10th Cir.1987) (en banc)). In this case, the Bank filed a written motion for sanctions, the plaintiffs responded in writing opposing sanctions, and the district court heard evidence and arguments of counsel on the issue of sanctions before deciding to impose them. Thus, this is not a case where sanctions were imposed summarily, without warning or discussion.

Nevertheless, the plaintiffs contend that their right to due process was violated because they were never told that sanctions were being considered against *them* in addition to or instead of their attorneys,[5] and this deprived them of an opportunity to argue about how sanctions, if awarded, should be allocated. Having vacated the sanctions order on other grounds, we need not decide whether the notice and opportunity to respond provided to the plaintiffs through their counsel in this case satisfied due process, or whether direct notice to the plaintiffs was necessary, as they contend.

On remand, if the district court in the exercise of its discretion imposes Rule 11 sanctions for the frivolous RICO claim, the target of such sanctions will likely be the responsible counsel, who already had an opportunity to argue that sanctions were unwarranted on this ground. That issue does not need to be revisited. If there is a dispute as to the proper allocation of any such sanctions, however, then both plaintiffs and their former counsel should be provided an opportunity to respond and, if necessary, introduce evidence relevant to the allocation question. The plaintiffs and their former counsel are presumed to be notified by this opinion that Rule 11 sanctions may be considered against them on the basis of the frivolously pleaded RICO claim.

### III. CONCLUSION

For the reasons expressed above, we RE-VERSE the district court's order of dismiss-

---

5. If, in fact, the plaintiffs never received such notice, their attorneys are to blame. The Bank's motion requesting sanctions, which was served on the plaintiffs' attorneys, specifically stated: "Rule 11 provides for reasonable expenses and a reasonable attorney's fee assessed *against the rep-* *resented parties, which [the Bank] requests.*" Appellant's App., No. 93–7080, Tab 4 at 3 (emphasis added). Rule 11 also stated explicitly that a court could impose sanctions upon "a represented party." Fed.R.Civ.P. 11 (prior to amend. of Dec. 1, 1993).

al to the extent that it dismissed the plaintiffs' state law fraud claims against Tallon and the Bank, and conversion claims against Tallon, the Bank, Bradshaw, and Fox, and REMAND for further proceedings consistent with this opinion. We also VACATE the order imposing Rule 11 sanctions against the plaintiffs in the amount of $32,885.15.