**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

January 29, 1998

_____

| | | |
|---|---|---|
| DAIRYLAND INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Counter-Defendant-Appellee, | ) | |
| | ) | |
| v. | ) | No. 95-2160 |
| | ) | (D.C. No. CIV-93-238) |
| RONALD HERMAN, personal representative of the Estate | ) | (Dist. of New Mexico) |
| of Glenna Susie Herman and as father and next of friend of | ) | |
| Andrew Herman, a minor child, | ) | |
| | ) | |
| Defendant-Counter-Claimant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PETER H. JOHNSTONE, Administrator of the Estate of | ) | |
| Ivan S. Fragua, deceased, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY, BARRETT,** and **LIVELY\*\*,** Circuit Judges.

_____

\*\*The Honorable Pierce Lively, Senior Judge, United States Circuit Court of Appeals for the Sixth Circuit, sitting by designation, heard oral argument but did not participate in the decision. Judge Lively retired on December 31, 1997.

--------

Ronald Herman (Herman) appeals the district court's order granting summary judgment in

favor of Dairyland Insurance Company (Dairyland) and the district court's order denying his motion

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

for reconsideration.

Facts

On August 3, 1989, at approximately 8:30 a.m., Ivan Fragua (Fragua) was involved in a serious two car head-on collision. It is undisputed that Fragua, who was driving with a blood alcohol level of .21, abruptly pulled into the wrong lane and struck the automobile driven by Glenna Susie Herman (Susie), Herman's wife. Fragua killed three people in the accident, including himself, Paula Suazo (Suazo), the owner and passenger of the vehicle Fragua was driving, and Susie. Andrew Herman (Andrew), Herman's son who was nine years old at the time, was a passenger in his mother's car and was seriously injured.[1]

Fragua was insured by Dairyland as a permissive driver of Suazo's vehicle with liability policy limits of $25,000 per person and $50,000 per occurrence. On December 1, 1989, Dairyland settled with Suazo's estate for 1/3 of the policy limits, $16,667.

Both Dairyland and Herman made offers to settle the claims of Susie's estate and Andrew for the remaining policy limits of $33,333.33.[2] During settlement negotiations, Dairyland became aware of a potential subrogation claim by Herman's health insurance provider, Health-Plus of New Mexico, Inc., for Andrew's medical expenses. A settlement agreement was never reached, however, because Dairyland conditioned settlement upon the release of all claims, including the potential

---

[1]     Andrew suffered a concussion, two broken legs, a broken foot, and multiple bruises and lacerations. In addition, he was trapped in the car beside his dead mother for over two hours. Andrew was hospitalized for 33 days and incurred medical expenses of $33,580.22. (Appellant's Appendix at 35).

[2]     Both parties asserts that they were the first ones to offer to settle for policy limits. See (Answer Brief by Appellees at 2 & Appellant's Brief in Chief at 20). However, it is unclear from the record on appeal what event took place or in what sequence events occurred during settlement negotiations.

subrogation claim, against its insured, Fragua, and Herman refused to release the potential subrogation claim.

Subsequently, Herman, individually, as administrator of and on behalf of Susie's estate, and as guardian of Andrew filed suit in New Mexico State District Court against the estate of Fragua. After a trial on the merits, Herman was awarded a judgment of $2,725,000 on Susie's estate's claims and $275,000 on Andrew's and his individual claims, jointly. Judgment was entered on January 21, 1992, and bears interest at the rate of 15% per annum. Following the entry of judgment, Dairyland paid the remaining policy limits of $33,333.33 in exchange for a partial satisfaction of judgment.

Dairyland then filed this action for a declaratory judgment under 28 U.S.C. § 2201 against Peter H. Johnstone, in his capacity as administrator of Fragua's estate, and against Herman, as administrator of Susie's estate and guardian of Andrew. Dairyland sought a declaratory judgment that it was not responsible for the remaining judgment in excess of policy limits against Fragua's estate. After Dairyland initiated this action, Johnstone assigned all of Fragua's first party claims against Dairyland to Herman.[3] Dairyland then dismissed its action against Fragua's estate and proceeded against Herman as the assignee.

In his answer, Herman counterclaimed asserting Fragua's first party claim for bad faith failure to settle seeking to require Dairyland to pay the full amount of the judgment in excess of its policy limits.[4] Dairyland then counterclaimed against Herman for asserting the bad faith claim. Both

---

[3] The assignment was executed on March 2, 1993, and approved by the New Mexico Probate Court on March 8, 1993.

[4] In August, 1991, we dismissed for lack of jurisdiction Herman's first bad faith refusal to settle claim against Dairyland on the grounds that Herman's claim was premature since a cause of action for bad faith does not accrue until a judgment has been obtained against the insured, or his estate, in excess of the liability coverage. Johnstone v. Dairyland Ins. Co., No. 91-

parties moved for summary judgment, Dairyland on its original declaratory judgment action and

Herman on the bad faith counterclaim.

On July 1, 1993, the district court denied Herman's March 26, 1993, motion for summary

judgment and granted Dairyland's April 26, 1993, motion for summary judgment. The district court

concluded that:

> To support a bad faith failure to settle, an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration.

> The courts also have held that if a tort feasor settles when they have knowledge of a subrogation claim, the settlement would not bar a subsequent suit against the tort feasor by the party with subrogation rights if the subrogation rights were not included in the settlement.

> And indeed, as Mr. Foster argues, in some jurisdictions it's tantamount to bad faith in the event it is settled without taking the subrogation rights into consideration.

> In the case at bar, Dairyland had notice that there would be a party with subrogation rights. It appears also that for a while Mr. Herman withheld the nature and the amount of subrogation claims, thus preventing completion of the settlement with Dairyland.

> Also from the deposition of Mr. Lucero, it appears that he was informed that there were subrogation rights, but he was not given any more specific information.

> Also by the letter of March 26, 1990, from the Rodey firm, it appears that there is a subrogation claim being made on behalf of Health-Plus of New Mexico, Inc.

> Dairyland's refusal to settle subject to the subrogation claim was not without just cause, and therefore that does not exemplify bad faith.

> Also Mr. Grisham's argument that there are two basic claims is disputed by the record, clearly that [sic] the claim was being made to settle both claims.

---

2043, 1991 WL 151767 (10th Cir. Aug. 12, 1991).

The Court finds that here there was an effort by Dairyland to give or offer the remaining amount of the policy limits in exchange for a full release to include subrogation rights. Mr. Grisham apparently was of the view that subrogation rights stood apart from the basic claim. That finds no support in New Mexico law.

(Appellant's Appendix at 148-49).

On April 25, 1995, the district court denied Herman's motion for reconsideration. On July 11, 1995, the district court granted Dairyland's motion to voluntarily dismiss its counterclaim against Herman, with prejudice, in order to resolve all issues between the parties.

### Applicable Law & Standard of Review

The district court's jurisdiction over this matter was based on diversity of citizenship. 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law of the forum state. Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994). We review the district court's determinations of state law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Magnum Foods, Inc. v. Continental Cas. Co., 36 F.3d 1491, 1497 (10th Cir. 1994). Since New Mexico is the forum state in this dispute, we apply the most recent statement of New Mexico law by the New Mexico Supreme Court. Wood v. Eli Lilly & Co., 38 F.3d 510, 513 (10th Cir. 1994).

We review the grant or denial of summary judgment de novo, Ellis v. United Airlines Inc., 73 F.3d 999, 1003 (10th Cir.), cert. denied, ___ U.S. ___ (1996), applying the same legal standard used by the district court. Crow Tribe of Indians v. Repsis, 73 F.3d 982, 986 (10th Cir. 1995), cert. denied, ___ U.S. ___ (1996). Although both parties moved for summary judgment, the district court's consideration and our standard of review remain the same. E.E.O.C. v. Steamship Clerks Union, Local 1006, 48 F.3d 594, 603 n.8 (1st Cir.), cert. denied, ___ U.S. ___ (1995). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and . . . the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## Discussion

Herman contends that the district court erred in granting summary judgment in favor of Dairyland and in denying his motion for summary judgment on the bad faith failure to settle counterclaim. Specifically, Herman asserts that Dairyland's refusal to pay $33,333.33, an amount within the policy limits, to settle Susie's estate's and Andrew's claims against Dairyland's insured, Fragua, was in bad faith because it resulted in a $3,000,000 judgment against Fragua's estate. Herman argues that Dairyland's refusal to settle the claims against their insured for policy limits of $33,333.33 cannot be justified by the possibility of a subrogation claim by Herman's health insurance provider, which was never pursued, nor can it be excused by the insolvency of Fragua's estate.[5]

Dairyland contends that the district court properly granted summary judgment in its favor. Dairyland argues that the district court correctly concluded that, as a matter of law, it acted in good faith when it required a release of all claims against its insured, Fragua, including subrogation claims, as a condition to a policy limits settlement.

In New Mexico, there is a policy to favor settlement whenever feasible. Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co., 690 P.2d 1022, 1024 (N.M. 1984). Although settlement is not required and is left to the judgment of the insurer, the relationship between the insurer and the

---

[5] In its answer brief, Dairyland states that it "did not assert in the trial court and does not assert on appeal that the insolvency of its insured [Fragua] had anything to do with Dairyland's right to insist on a complete release of all claims as a condition to a policy limits settlement." (Answer Brief by Appellees at 6). Therefore, this issue is moot and will not be discussed. However, see Torrez v. State Farm Mut. Auto. Ins. Co., 705 F.2d 1192 (10th Cir. 1982), for a complete discussion of this issue under New Mexico law.

insured is a contractual one which carries with it an implied covenant of good faith and fair dealing. Id. The implied covenant of good faith and fair dealing imposes a duty on an insurer to settle a claim against its insured within policy limits whenever there is a substantial likelihood of recovery in excess of policy limits. Kelly v. Farmers Ins. Exch., 239 Cal. Rptr. 259, 261-62 (Ct. App. 1987). See Torrez v. State Farm Mut. Auto. Ins. Co., 705 F.2d 1192, 1195 (10th Cir. 1982) (applying New Mexico law).

When a claimant offers to settle a claim, which is in excess of the policy limits, within policy limits, the insurer must evaluate the settlement offer in good faith and consider the interests of the insured equally with its own. Lujan v. Gonzales, 501 P.2d 673, 680-81 (N.M. Ct. App.) ("good faith" in refusal to settle cases "means an insurer cannot be partial to its own interest, but must give its interests and the interests of the insured equal consideration."), cert. denied, 501 P.2d 663 (1972). An insurer who refuses to accept a reasonable settlement offer within policy limits, in violation of its duty of good faith and fair dealing, is liable for the entire judgment against the insured even if it exceeds policy limits. Torrez, 705 F.2d at 1195 (citations omitted). See Foundation Reserve Ins. Co. v. Kelly, 388 F.2d 528, 532 (10th Cir. 1968) (New Mexico law); Ambassador, 690 P.2d at 1025; Lujan, 501 P.2d at 680; Commercial Union Assurance Cos. v. Safeway Stores, Inc., 610 P.2d 1038 (Cal. 1980). On the other hand, "'where an insurer acts honestly and in good faith on adequate information, it should not be held liable for excess liability due to its failure to reach a settlement.'" Ambassador, 690 P.2d at 1025 (quoting Brisco v. Meritplan Ins. Co., 643 P.2d 1042, 1044 (Ariz. Ct. App. 1982)).

Based on the tragic nature of this accident, Dairyland knew or should have known with a minimum of investigation that the claims against its insured, Fragua, would, in all substantial

likelihood, be in excess of its policy limits.[6] Accordingly, the issue before us is whether, under New Mexico law, Dairyland satisfied its duty to treat its interests and the interests of its insured equally, as a matter of law, when it required a release of all claims, including subrogation claims, against its insured as a condition precedent to a policy limits settlement when there is a substantial likelihood of recovery in excess of policy limits. The answer is no.

Following certification from this Court, the New Mexico Supreme Court, held that "the insurer has a good-faith duty to minimize, if not eliminate, its insured's liability." <u>Dairyland Ins. Co. v. Herman</u>, No. 23,718, slip op. at 11 (N.M. Dec. 18, 1997). The court reasoned that "the duty of the insured does not mandate an all-or-nothing approach. Rather, what is required is a balancing of the interests of itself and its insured, the reasonableness of the claimant's demands, and the probable outcome of litigation as opposed to settlement." <u>Id</u>. The Court noted that this "is a question that must be answered by the specific facts of the case." <u>Id</u>.

Therefore, we hold that because the parties urge conflicting interpretations of the facts, the question of whether Dairyland acted in good faith in conditioning settlement on a release of all claims, including subrogation claims, should be resolved at trial. <u>See</u> <u>id</u>.

---

[6] There is some indication in the record that Dairyland admitted in the district court in 1991 during the proceedings on Herman's first unsuccessful bad faith claim that it knew the claims exceeded policy limits of $25,000 each. (Appellant's Appendix at 91).

<u>Conclusion</u>

Based on the foregoing, we **REVERSE** the district court's grant of summary judgment in favor of Dairyland and we **REMAND** for trial on the merits.

**REVERSED** and **REMANDED.**

Entered for the Court

James E. Barrett
Senior Circuit Judge